1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THERESA LIRA-INIGUEZ, | ) | 1:07-cv-01054 OWW GSA |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS |
| Plaintiff, | ) | REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | (Document 24) |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

## **BACKGROUND**

Plaintiff Theresa Lira-Iniguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs in support of their cross-motions for summary judgment, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge, for findings and recommendations to the District Court.

1

## FACTS AND PRIOR PROCEEDINGS[1]

2      Plaintiff filed for disability insurance benefits and SSI on March 22, 2004.  AR 66-69,

3 374-377.  She alleged disability since October 21, 2001, due to back pain.  AR 66, 74, 83.

4 Plaintiff previously was granted a favorable closed period of disability from October 20, 2001

5 through September 26, 2003.  AR 11; Plaintiff's Opening Brief, at p. 2.  After being denied both

6 initially and upon reconsideration on her March 2004 applications, Plaintiff requested a hearing

7 before an Administrative Law Judge ("ALJ").  AR 17, 24, 30-34, 36-41, 42.  On June 6, 2006,

8 ALJ James Berry held a hearing.  AR 383-406.  ALJ Berry denied benefits on August 7, 2006.

9 AR 9-16.  On May 22, 2007, the Appeals Council denied review.  AR 5-8.

10      <u>Hearing Testimony</u>

11      On June 6, 2006, ALJ Berry held a hearing in Fresno, California.  AR 383-406.  Plaintiff

12 appeared with her attorney, Robert Ishikawa.  AR 385.  Vocational expert ("VE") Jose Chaparro

13 also appeared and testified.  AR 385, 401-406.

14      Plaintiff testified that she was 43 years old at the time of the hearing.  AR 386.  She

15 completed the twelfth grade and has a high school diploma.  AR 387.  She can read a newspaper

16 and write a simple letter.  AR 387.  She received vocational training through workman's comp in

17 business technology.  AR 387.  She last worked in October 2001 doing in home supportive

18 services, which is based on cleaning house.  AR 387.  She also worked for Kentucky Fried

19 Chicken as a stock person.  AR 387-388.  She did both jobs at the same time, working more than

20 40 hours a week for Kentucky Fried Chicken and less than 20 hours a week for in home

21 supportive services.  AR 388.

22      Plaintiff did stock at Kentucky Fried Chicken.  AR 388.  She prepared the hot food, such

23 as mashed potatoes, gravy, potato wedges, hot wings and biscuits.  AR 388.  She also unloaded

24 the freight when orders came in for the store.  AR 388.  She had to arrange everything in the

25 freezer.  AR 388.  The heaviest thing she lifted was 50 pounds.  AR 388.

26

27

28

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    For in home supportive services, the heaviest thing she lifted was a bucket for mopping

2    filled with two gallons of water.  AR 389.  She was cleaning, dusting, sweeping and mopping.

3    AR 389.  She also would take the patient to the doctor and administer medication.  AR 389.

4    Plaintiff testified that she has an industrial injury.  AR 389.  Her lower back was injured

5    at Kentucky Fried Chicken.  AR 389-90.  Her current treating doctor is "Strovopolis."  AR 390.

6    She has seen him since 2002.  AR 390.  He gives her medication for back pain.  AR 390.  She

7    had surgery on her back in June 2003, which was performed by Dr. Simons.  AR 390.  The

8    surgery did not relieve her pain.  AR 390.  It only took some of the numbness out of her right leg.

9    AR 390.  She still has back pain on the lower right side of her back below the waist.  AR 390-91.

10   The pain travels down her right leg all the way down to her foot.  AR 391.  She also has a little

11   bit of numbness.  AR 391.

12   Plaintiff testified that she was taking Darvocet, Naprosyn and Flexeril, but the doctor

13   changed her to "Ansape, Darvan and Soma."  AR 391.  The prior medication was not helping her

14   and did not cut down the pain at all.  AR 391.  She planned to get the new medication on the day

15   of the hearing.  AR 391.  She did not think she was having any side effects from the medication

16   she was taking.  AR 391.  She had something "high" in her liver that might have been caused by

17   the medication.  AR 391-92.

18   Plaintiff testified that she has not worked since October 21, 2001.  AR 392.  She was

19   going to vocational training for an hour at the end because her back was hurting too much.  AR

20   392.  The course usually takes nine months.  AR 392.  She was not able to complete it because of

21   her back.  AR 392.  She was not going to sit there and struggle with the pain.  AR 392.  Typing

22   was one of the requirements.  AR 392.  She was not able to meet the requirements in typing

23   because her carpal tunnel started to come back.  AR 392.  Her fingers are all stiff and she has

24   pain all the way up her arms.  AR 392.  She had problems sitting in class.  AR 393.  She was able

25   to purchase a special chair.  AR 393.  She was not able to concentrate and attend her classes.  AR

26   393.  She had to drink her medication at school just to finish out the day.  AR 393.  It would

27   affect her ability to concentrate.  AR 393.

28

Plaintiff testified that the pain in her back is constant, sharp pain. AR 393. If she moves wrong, then there is pain all down her back and leg. AR 393. It feels like they are sticking needles in her. AR 393. Sometimes it is so bad it feels like she has "been hit by a train." AR 393. It bothers her to lift. AR 393. She cannot even lift an eight-pound baby and a ten-pound sack of potatoes hurts her back. AR 393. It bothers her to stand. AR 393. She can stand about an hour during an eight-hour day. AR 394. She would be in a lot of pain after that. AR 394. Sitting bothers her. AR 394. She can sit about an hour or a little more in an eight-hour day. AR 394. She could sit and stand about two hours during an eight-hour day. AR 394. After that she would be in constant pain. AR 394. She lies down during the day when she is at home. AR 394. She lies down 20 or more times when she is at home for about 20 to 30 minutes. AR 394-95. It also bothers her to bend from the waist. AR 395. She can bend from the waist a little bit, but cannot get very far down. AR 395. She cannot crouch. AR 395. She cannot sweep and mop because stooping over a little bit gives her pain all down her back. AR 395. She does not have any problems reaching in front or her. AR 395. She can reach over her head, but she has problems handling things since her carpal tunnel is starting to come back. AR 395. She cannot even hold the phone for two minutes. AR 395. Her hand "goes completely numb." AR 395. She has to drive with one hand because the other hand goes numb. AR 396. She had been treated before for carpal tunnel. AR 396.

Plaintiff testified that she has problems climbing stairs. AR 396. She cannot "just climb the steps." AR 396. She usually tries to use elevators. AR 396. If not, she will "go down one step at a time real slow." AR 396.

Plaintiff lives in a house with her three children who are 15, 13, and 12. AR 396. Her daughters are the ones that do the housework for her. AR 396. She will help them out. AR 396. She will sweep even though it hurts her a lot. AR 396. They will pick up the dirt off the ground. AR 396. She does not do laundry. AR 396-97. Her children will give it to her and she will put it in the washer and set the soap in it. AR 397. She will not bend down to get things on the ground. AR 397. They will throw things in for her or pick them up and give them to her. They

4

also will throw it in the dryer.  AR 397.  When it is done, they will throw it on her bed and she will sit there and fold it. AR 397.

Plaintiff testified that she does the driving.  AR 397.  She will take her children to school in the morning and pick them up in the evening.  AR 397.  She tries not to go to the store until they get home so they can carry the groceries for her.  AR 397.  If she goes to the store, the boys that work in the store will put them in the vehicle and she will leave them there until they get home.  AR 397.

Plaintiff testified that she does not have any social activity.  AR 397.  She tries to go to her children's school or sports events.  AR 397.  She will not sit at the bleachers.  AR 397.  She will sit in the vehicle since the seat is more comfortable.  AR 397.  She will have to get in and out of the vehicle when sitting too long.  AR 397.  She tried to go to a function two days prior to the hearing, but "paid the price" when she came back home.  AR 397-98.  It was an awards ceremony that lasted about an hour-and-a-half.  AR 398.  After the ceremony, her back was hurting really bad.  AR 398.  She went home and drank all kinds of medication.  AR 398.  It did not work.  AR 398.  She was still in a lot of pain.  AR 398.  She goes to see Dr. Stovolopis every two or three months when her medication runs out.  AR 398.

Plaintiff testified that ever since her back injury, she is losing out on a lot because she can no longer do anything with her kids.  AR 398.  She cannot help them out with their sports.  AR 398.  She cannot take them to a movie or bowling.  AR 398.  They cannot bike ride and she cannot go shopping with them.  AR 398.  She also cannot sit up close and watch their sports.  AR 398.

In response to questions from the ALJ, Plaintiff testified that she started her vocational training through worker's comp at the end of August 2005.  AR 399.  She stopped going in April 2006.  AR 399.  She completed math, English, reading and spelling.  AR 399.  As far as computer skills they wanted her learn, she got as far as Word.  AR 399.  She could not type more than 20, 21 words a minute.  AR 399.  She received a certificate.  AR 399.  She was going to school from eight in the morning until 3:30 five days a week.  AR 399-400.

1    Plaintiff testified that she has been trying to see another pain doctor.  AR 400.  Dr.

2  Stropolopolis is supposed to refer her or her other attorney is supposed to get something from

3  him.  AR 400.

4    Plaintiff testified that her worker's comp claim is finished.  AR 400.  They were paying

5  her $296 every two weeks.  AR 400.  It was something like $13,000.  AR 400.

6    The VE also testified.  At the outset, he described Plaintiff's past relevant work.  AR 402.

7  The Kentucky Fried Chicken job appeared to be closest to cook helper, which is medium,

8  unskilled work.  AR 402.  The other job as home attendant is medium and semi-skilled.  AR 402.

9  However, as Plaintiff did it, the duties were a limited description of the DOT and were unskilled

10  and light.  AR 402.

11    For the first hypothetical, the ALJ asked the VE to consider an individual 43 years of age

12  with a twelfth grade education and vocational training with Plaintiff's past relevant work

13  experience.  AR 402.  This individual also had a combination of severe impairments with a

14  residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently, to

15  stand, walk and sit six hours each, and to occasionally stoop.  AR 402.  Given those limitations,

16  the VE testified that the individual could not do the cook helper job.  AR 402.  The individual

17  also could not do home provider as defined by the DOT, but could do it as performed.  AR 402.

18    For the second hypothetical, the ALJ asked the VE to consider a hypothetical individual

19  with the same vocational parameters with a combination of severe impairments.  AR 403.  The

20  ALJ also asked the VE to assume that this individual retained the residual functional capacity to

21  stand and walk two hours total, sit two hours total and lift five pounds.  AR 403.  Given these

22  limitations, the VE testified that this individual could not perform either of the Plaintiff's past

23  jobs and could not perform any other jobs in the national economy.  AR 403.

24    For the third hypothetical, the ALJ asked the VE to assume an individual with the same

25  vocational parameters with a combination of severe impairments.  AR 403.  This person also

26  retained the residual functional capacity to lift and carry five pounds maximum, stand two hours

27  total, walk two hours total and sit two hours total.  AR 403.  This individual could not climb,

28  stoop, crouch or crawl, but could kneel and balance occasionally.  AR 403.  This individual

1   might "frequently--effective in the ability to reach, handle, finger and feel." AR 403. This

2   individual also should avoid unprotected heights, moving machinery, temperature extremes,

3   vibrations and pulmonary irritants. AR 403. Given these limitations, the VE testified that such

4   an individual could not perform any of the Plaintiff's past work and could not perform any other

5   jobs in the national economy. AR 403-04.

6           For the fourth hypothetical, Plaintiff's counsel asked the VE to assume a person with the

7   same vocational background. AR 404. This person also would have difficulty repetitively

8   bending or working in a bent over position, could be on her feet for 30 to 60 minutes at a time

9   three to four hours out of an eight-hour day, sit for 60 to 90 minutes at a time for four to six

10  hours in eight-hour day and could lift 15 to 20 pounds occasionally and five pounds more

11  frequently. AR 404. She also could lift 15 to 20 pounds occasionally, five to ten pounds

12  frequently, especially from table level. AR 404. With these restrictions, the VE testified that this

13  person could not do the cook helper job. AR 404. She also could not do the home provider as

14  defined by DOT, but could do it as performed. AR 404. As performed, she would have to be on

15  her feet for more than three to four hours in an eight-hour day. AR 404. Given that factor, she

16  could not do the home provider work as she performed it either because she was on her feet all

17  eight hours. AR 405.

18          <u>Medical Evidence</u>

19          On October 25, 2001, Michael Houston, D.C., examined Plaintiff and completed a

20  Doctor's First Report of Occupational Injury or Illness form. AR 102. Dr. Houston reported that

21  Plaintiff was injured at Kentucky Fried Chicken on October 11, 2001, while lifting and putting

22  away heavy boxes. AR 102. She was diagnosed with lumbar strain (acute) and prescribed Vioxx

23  and vicodin. AR 102. She also received a back brace. AR 102. Dr. Houston opined that

24  Plaintiff was not able to perform her usual work and he placed her on full temporary disability.

25  AR 102.

26          On October 25, 2001, Plaintiff underwent an x-ray of her lumbar spine. AR 103. The x-

27  ray revealed evidence of lumbar muscle spasm and disc narrowing at L2-3, rule out herniation

28  versus degeneration of the disc material. AR 103.

From November 1, 2001 through December 17, 2001, Plaintiff continued to receive treatment from Dr. Houston for her back.  AR 113-19, 121-22.  She remained off work during this time.  Plaintiff also received physical therapy for her back from November 5, 2001 through December 12, 2001.  AR 104-106.

On November 20, 2001, Plaintiff underwent Magnetic Resonance Imaging ("MRI") of the lumbosacral spine.  AR 111-12.  The MRI revealed degenerative disc disease, degenerative joint disease, soft tissue lesion of uncertain etiology at the posterosuperior corner of L3 vertebral body, anterior disc protrusions with osteophytes from T10 to T12 levels and at L2/L3 level and L5/S1 right posteromedial disc protrusion measuring approximately 11mm, moderate spinal stenosis, impingement of the right S1 nerve root at the right lateral recess and probable impingement of L5 nerve roots at the neural canals.  AR 112.

On December 19, 2001, Robert M. Mochizuki, M.D., of Orthopaedic Associates Medical Clinic, Inc., completed an evaluation of Plaintiff.  AR 107-10.  Plaintiff complained of pain in her lower back and right lower extremity, paresthesias from the gluteal area to the posterior knee and sensory loss of the lateral aspect of her leg and right foot.  AR 107.  On physical examination, Plaintiff walked with a slight limp, favoring her right lower extremity.  AR 109.  She had a cane.  AR 109.  Examination of her back showed no evidence of muscle spasm, atrophy or swelling.  AR 109.  Lasegue test was positive on the right side.  AR 109.  Her range of motion on lateral bending, lateral rotation and extension were normal.  AR 109.  Dr. Mochizuki assessed Plaintiff with lumbar disk herniation of L5-S1 with S1 radiculopathy of right lower extremity and possible L5 radiculopathy.  AR 110.  Dr. Mochizuki recommended a lumbar myelogram with CT scan, total temporary disability for three weeks and a follow-up visit after the CT myelogram.  AR 110.

On July 24, 2002, Robert Simons, M.D., completed an evaluation of Plaintiff.  AR 153-56.  Following an examination, Dr. Simons assessed Plaintiff with Right S1 radiculopathy, herniated disc L5-S1 right, symptomatic, minor degenerative changes at L2-3 and increased body mass index of 39.  AR 155.  Dr. Simons discussed option with Plaintiff, including laminotomy/disketomy L5-S1 right surgery.  AR 155.

On July 31, 2002, Plaintiff underwent an MRI of her lumbar spine. AR 151-52. The MRI revealed a small broad central and right paracentral disc protrusion, L5-S1, and Schmorl's node at L2-3. AR 152.

On August 7, 2002, Dr. Simons prepared a letter to the State Compensation Insurance Fund. AR 150. Dr. Simons opined that Plaintiff's condition started primarily as a result of injury on May 15, 2001. AR 150. The need for surgery was prompted by that injury. AR 150. Dr. Simons further opined that surgery would improve Plaintiff, but not to the extent that she could resume her "precise former job duties with KFC" and hence she would be considered a qualified injured worker. AR 150.

On June 12, 2003, Plaintiff underwent a laminotomy/diskectomy L5-S1 right, nerve root decompression and microdissection, which was performed by Dr. Simons. AR 130-39. There were no apparent complications. AR 131.

On July 11, 2003, Dr. Simons examined Plaintiff one month after lumbar surgery. AR 129. Dr. Simons reported that Plaintiff had pain and cramping in her right buttocks and right lower extremity for the first two weeks following surgery, but seemed to be improving. AR 129. On examination, Plaintiff walked "reasonably normal." AR 129. Her reflexes were 1+ at the knees and absent at both ankles. AR 129. Sensation in the lower limbs was intact and straight leg raising was tolerated to 80 degrees on the right and 90 degrees on the left. AR 129. She appeared to have a mild right L5 radiculitis and traveling would be difficult over an extended distance. AR 129. Dr. Simons opined that Plaintiff remained temporarily totally disabled until mid September. AR 129.

On July 15, 2003, Plaintiff sought emergency room treatment at Central Valley General Hospital for complaints of low back pain. AR 304-309. She was walking slowly and lightly bent forward with a walker. AR 308. She received medication for pain. AR 308. X-rays of her lumbar spine showed L5-S1 degenerative disc disease. AR 309.

On September 26, 2003, Dr. Simons evaluated Plaintiff three months after her lumbar surgery. AR 127-28. Plaintiff reported feeling improved with some residual discomfort about the right buttocks area and intermittent burning about the right posterior lateral calf. AR 127.

Her medications included "occasional Vicodin." AR 127. On examination, Plaintiff ambulated properly. AR 127. Her ankle reflexes were absent on the right. AR 127. Sensation in the lower limbs was generally intact distally. AR 127. Straight leg raising was tolerated to 90 degrees bilaterally. AR 127. Dr. Simons opined that Plaintiff was considered to be a qualified injured worker and returned her to care of Dr. Stavropoulos. AR 127. He extended her temporary total disability until Dr. Stavropoulos had a chance to reassess. AR 127-28.

On October 13, 2003, Yannis M. Stavropoulos, M.D., examined Plaintiff and prepared a report for the State Compensation Insurance Fund. AR 340-41. Dr. Stavropoulos noted that Plaintiff was gradually recuperating from her surgery. AR 340. She had residual right L5 and S1 radiculopathy. AR 341. Dr. Stavropoulos opined that she should stay on temporary total disability until approximately mid- to end-December. AR 341.

On November 24, 2003, Dr. Stavropoulos prepared a report for the State Compensation Insurance Fund. AR 337-38. Dr. Stavropoulos advised Plaintiff to progressively increase the amount of lumbar exercise, abdominal strengthening, leg strengthening and walking. AR 338. He opined that Plaintiff should continue on temporary total disability for her postoperative period until she completed a full six-month period. AR 338. On that same date, Dr. Stavropoulos also opined that Plaintiff was unable to drive or ride longer than three hours per day in a vehicle. AR 339.

On January 6, 2004, Dr. Stavropoulos examined Plaintiff and prepared a permanent and stationary report for the State Compensation Insurance Fund. AR 331-36. Dr. Stavropoulos advised that Plaintiff had gradually recovered from her surgery and felt no right leg pain, minimal right leg numbness and slight fatigue of the right calf muscle with prolonged standing or walking. AR 333. On examination, she had slight to moderate tenderness on both sides of the lumbar paravertebral musculature, worse on the right. AR 333. She had positive straight leg raising at 70 degrees on the right with negative Lasegue's sign. AR 333-34. She had negative straight leg raising on the left. AR 334. She was capable of walking on the heels and toes. AR 334. Her right ankle reflex was absent and the left was normal. AR 334.

1    Dr. Stavropoulos opined that Plaintiff's condition had been stable and she had reached

2 maximum medical improvement. AR 334. She could be considered permanent and stationary

3 and ratable. AR 334. Dr. Stavropoulos further opined that Plaintiff had suffered permanent

4 disability. AR 335. Her subjective factors of permanent disability included constant slight

5 lumbar pain that becomes slight to moderate with activities of repetitive bending and twisting of

6 the lumbar spine, with lifting anything heavier than 20 pounds, with mild right plantar numbness

7 and right calf fatigue with prolonged standing or walking. AR 335. Objective factors of

8 permanent disability included radiographic preoperative evidence of herniated disk, multilevel

9 disk degeneration, operative findings of L5-S1 disk herniation, postoperative slight to moderate

10 incisional scar tissue and paravertebral muscle tenderness, positive straight leg raising, absence

11 of right ankle reflex, fatigue of repetitive plantarflexion and reduction of range of motion. AR

12 335. Dr. Stavropoulos concluded that these factors precluded heavy lifting and repetitive

13 bending and stooping. AR 335-36. He deemed Plaintiff not capable of returning to her usual and

14 customary work as a stocker, and if it was determined that no modified or alternate work was

15 available on a permanent basis with her last employer, then she should be considered a qualified

16 injured worker for vocational retraining purposes. AR 336.

17    On April 28, 2004, Plaintiff sought emergency room treatment at Central Valley General

18 Hospital for back pain. AR 190-95. She received morphine and phenergan. AR 194.

19    On May 4, 2004, Dr. Stavropoulos examined Plaintiff and prepared a report for the State

20 Compensation Insurance Fund. AR 327-28. On examination, Plaintiff had slight tenderness in

21 the right lumbar paravertebral musculature. AR 328. She had positive straight leg raising on the

22 right without Lasegue's sign at 60 degrees in the sitting position. AR 328. Her right ankle reflex

23 was "trace present." AR 328. She had mild weakness of right foot inversion and slight

24 numbness in the sole of the right foot. AR 328. Dr. Stavropoulos opined that Plaintiff had no

25 change of disability status. AR 328.

26    On June 22, 2004, Charles Potter, M.D., of Edington Medical Group completed a report

27 as the Agreed Medical Examiner. AR 159-71. Plaintiff reported her history of working for

28 Kentucky Fried Chicken. AR 160. She indicated that her job required frequent standing,

walking with intermittent twisting, stooping, reaching at or above shoulder level, bending and lifting from 2 to 50 pounds, occasional climbing, pushing, squatting, kneeling, pulling, driving and occasional sitting.  AR 160.  Plaintiff did not believe she could do the same job.  AR 160.  She could not sleep on her side and walking for short periods of time, slight bending and sitting for short periods of time caused pain.  AR 161.  However, she could sit and stand for 30 minutes and walk for 10 minutes.  AR 162-62.

On examination, Plaintiff had poor posture with increase of abdominal size.  AR 167.  She had an antalgic gait on the right side and heel and toe walking were normal.  AR 167.  Flexion of her back was 50% of expected, extension 35% of expected and right and left lateral and rotation were normal.  AR 167.  She had straight leg raising 60 degrees on the right with positive dorsiflexion of the ankle.  AR 167.  Dr. Potter indicated that a pain check pushing on the coracoid process with a standard amount of force, Plaintiff indicated the pain was 18/20.  AR 168.  Normal individuals generally reported the pain for that test at 15-16/20, which indicated that Plaintiff had a "tendency to not process pain as well as many."  AR 168.

Dr. Potter diagnosed Plaintiff with status post one-level laminectomy and discectomy with residual mild radiculopathy of the left leg.  AR 168.  Dr. Potter characterized Plaintiff's subjective factors of disability as Constant Slight/Moderate pain in the low back and right leg with Occasional Severe discomfort related to twisting activities.  AR 169.  Dr. Potter opined that Plaintiff had a disability "best described as a disability precluding Heavy Lifting, Repeated Bending, Stooping and Twisting."  AR 169.  He further opined that she would not be able to return to the type of work she had been doing and required vocational rehabilitation.  AR 170.

On July 16, 2004, Dr. Potter completed a supplemental report.  AR 157-58.  Dr. Potter reviewed MRIs of the lumbar spine dated 11/20/01, 7/31/02 and 3/24/03.  AR 158.  He also reviewed a CT myelogram of the lumbar spine dated 1/4/02.  AR 158.  After reviewing the studies, Dr. Potter found nothing that would cause him to alter the opinions previously expressed in his report of June 22, 2004.  AR 158.

On July 27, 2004, Plaintiff sought emergency room treatment at Central Valley General Hospital for acute back pain.  AR 182-189.  She was given morphine and phenergan.  AR 189.

On August 17, 2004, Jonathan M. Gurdin, M.D., completed an orthopaedic evaluation for the Department of Social Services. AR 172-73. Plaintiff complained of low back pain with right leg pain. AR 172. On physical examination, Dr. Gurdin noted that Plaintiff was obese and moved slowly and deliberately about the examining room. AR 172. She appeared to be in "some genuine discomfort in the low back." AR 172. She walked slowly showing a right-sided antalgic limp. AR 172. Examination of her low back revealed slight tenderness in the midline from L4 to the sacrum and on the right side in the lower lumbar paraspinal musculature, about the sacroiliac joint and the sciatic notch. AR 173. She had a slightly positive Waddell sign with low back pain complained of with light pressure over the head. AR 173. She also had back pain with gentle trunk rotation that did not appear to move the lumbar area. AR 173. Straight leg raising was to 60 degrees on the right and to 70 degrees on the left with low back pain. AR 173. Seated straight leg raising was negative bilaterally. AR 173.

Dr. Gurdin diagnosed Plaintiff with lumbar disc disease with one prior surgery, possible failed back syndrome and obesity. AR 173. Dr. Gurdin opined that he would expect some improvement in her complaints with ongoing physical therapy, weight loss and possibly injection therapy. AR 173. Dr. Gurdin further opined that Plaintiff would have difficulty repetitively bending or working in a bent over position. AR 173. She probably could be on her feet for 30 to 60 minutes at a time and for 3 or 4 hours out of 8 hours. AR 173. She also probably could sit for 60 to 90 minutes at a time, and possibly for as long as 2 hours with an occasional break, and for 4 to 6 hours out of 8 hours. AR 173. She probably could lift 15 to 20 pounds occasionally and 5 or 10 pounds more frequently, especially from table level. AR 173.

On October 24, 2004, Plaintiff sought emergency room treatment at Central Valley General Hospital for acute low back pain exacerbation. AR 176. She was given morphine. AR 180.

On September 14, 2004, Brian Ginsburg, M.D., a state agency medical consultant, completed a Residual Functional Capacity Assessment form. AR 342-48. Dr. Ginsburg opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk for about 6 hours in an 8-hour workday, could sit about six hours in an 8-hour

1  workday and push and/or pull without limitations.  AR 343.  She was limited to occasional

2  stooping, but had no manipulative, visual, communicative or environmental limitations.  AR

3  344-46.  On March 10, 2005, Ernest Wong, M.D., reviewed and affirmed Dr. Ginsburg's

4  assessment as written.  AR 348.

5        On September 22, 2004, Dr. Stavropoulos completed an examination of Plaintiff and

6  prepared a report for the State Compensation Insurance Fund.  AR 324-26.  Plaintiff complained

7  of constant mild to slight lumbar pain when she avoided prolonged walking, frequent bending

8  and twisting and used pain medication.  AR 324.  On examination, Plaintiff had positive straight

9  leg raising on the right at 60 degrees with absent right ankle reflex.  AR 325.  She had mild

10  numbness in the sole of the right foot.  AR 325.  Range of motion testing revealed extension to

11  10 degrees, lateral bending to 20 degrees and forward flexion to 70 degrees mostly performed at

12  hip level.  AR 325.  Dr. Stavropoulos encouraged Plaintiff to participate in the employment

13  retraining process even with her given permanent limitations.  AR 326.

14        On November 3, 2004, Dr. Stavropoulos completed a Physician's Supplementary

15  Certificate for the Employment Development Department.  AR 322.  Dr. Stavropoulos indicated

16  that Plaintiff had persistent lumbar pain and stiffness.  AR 322.  He estimated that Plaintiff

17  would be able to perform her regular or customary work by November 2, 2005.  AR 322.

18        On January 18, 2005, Dr. Stavropoulos examined Plaintiff and provided a report to the

19  State Compensation Insurance Fund.  AR 366-68.  Plaintiff reported that she was driving 5-10

20  miles per day to commute her children to and from school.  AR 366.   She also performed up to

21  10-15 minutes of short-distance walking and managed personal hygiene, grocery shopping and

22  light house activities.  AR 366-67.

23        On March 28, 2005, Dr. Stavropoulos examined Plaintiff and prepared a report for the

24  State Compensation Insurance Fund.  AR 363-65.  Dr. Stavropoulos noted that Plaintiff had a 16-

25  pound weight gain over two months and counseled her on the benefit of weight reduction as it

26  affects the spine.  AR 364.  He advised her of a low cholesterol/low fat diet.  AR 364.  Dr.

27  Stavropoulos also opined that Plaintiff's pain without the use of medication was not tolerable.

28  AR 365.

On May 20, 2005, Dr. Stavropoulos examined Plaintiff in the presence of her 3 ½ year old nephew and prepared a report for the State Compensation Insurance Fund. AR 359-61. Plaintiff reported constant slight lumbar pain. AR 359. On examination, Plaintiff had guarding on both sides of the lumbar paravertebral musculature. AR 360. Range of motion testing revealed extension and lateral bending to 10 degrees and flexion to 60 degrees. AR 360. Straight leg raising bilaterally was positive at 60 degrees on the right and 70 degrees on the left without Lasegue's sign. AR 360. She had mild numbness in the right S1 dermatome and absence of right ankle reflex. AR 360. Dr. Stavropoulos noted that Plaintiff was not employed at the time, but did "care for a number of children at home." AR 361. Dr. Stavropoulos indicated that her current diagnosis and probable cause of exacerbation was facet joint overriding due to the disk space narrowing that occurred following her surgical intervention for her herniated disk, resulting in mild foraminal entrapment. AR 361.

On August 22, 2005, Dr. Stavropoulos examined Plaintiff and prepared a report for the State Compensation Insurance Fund. AR 356-58. Plaintiff reported constant slight lumbar pain 3-4 times during the day, which would become slight to moderate, requiring Naprosyn. AR 356. To control increased pain and muscle tightness, she used Vicodin and Flexeril approximately three nights a week. AR 356. She experienced daily right posterior calf and heel aching and fatigue with prolonged standing or walking. AR 356. Plaintiff informed Dr. Stavropoulos that she was to start a six month vocational computer training course. AR 358.

On December 13, 2005, Dr. Stavropoulos examined Plaintiff and prepared a report for the State Compensation Insurance Fund. AR 354-55. Dr. Stavropoulos indicated that Plaintiff had been rated as permanent and stationary with no heavy lifting and no repetitive bending and twisting of the lumbar spine. AR 354. Plaintiff reported attending computer operations school from 8:00 a.m. to 3:30 p.m., and avoided prolonged standing. AR 354. She also reported constant slight lumbar pain with frequent exacerbations with rare radiation into the right buttock and posterior thigh. AR 354.

On December 13, 2005, Dr. Stavropoulos also prepared a Physician's Supplementary Certificate for the Employment Development Department. AR 353. Dr. Stavropoulos opined

that Plaintiff was estimated to be able to perform her regular or customary work by December 3, 2006. AR 353.

On June 2, 2006, Dr. Stavropoulos completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) form. AR 371-73. Dr. Stavropoulos opined that Plaintiff could lift 5 pounds occasionally, could walk two hours total in an eight-hour day, could walk 20 minutes without interruption, could sit for two hours in an eight-hour day and could sit for twenty minutes without interruption. AR 371. She never could climb, stoop, crouch or crawl. AR 372. She occasionally could kneel and balance. AR 372. She frequently could reach, handle, finger and feel. AR 372. She also had environmental restrictions involving heights, moving machinery, extreme temperatures, vibration, chemicals, fumes and dust. AR 373. Dr. Stavropoulos further opined that Plaintiff used pain medications that could reduce her psychomotor abilities, including easy fatigue, lack of concentration and difficulty with alertness. AR 373.

ALJ's Findings

The ALJ determined that Plaintiff met insured status requirements through December 31, 2008. AR 13. The ALJ also determined that Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date. AR 13. The ALJ found that Plaintiff had the severe impairment of degenerative disc disease, status post lumbar discectomy, but she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13. The ALJ further found that Plaintiff had the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently and to stand, walk and sit 6 hours each in an 8-hour workday. AR 14. The ALJ concluded that Plaintiff was capable of performing her past relevant work as a home attendant. AR 15. Therefore, the ALJ found that Plaintiff was not under a "disability." AR 16.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations,

1  the Court must determine whether the decision of the Commissioner is supported by substantial

2  evidence.  42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla,

3  Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.  Sorenson v.

4  Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

5  reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401

6  (internal quotation marks and citation omitted).  The record as a whole must be considered,

7  weighing both the evidence that supports and the evidence that detracts from the Commissioner's

8  conclusion.  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and

9  making findings, the Commissioner must apply the proper legal standards.  E.g., Burkhart v.

10  Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

11  determination that the claimant is not disabled if the Commissioner applied the correct legal

12  standards, and if the Commissioner's findings are supported by substantial evidence.  See

13  Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

15      In order to qualify for benefits, a claimant must establish that she is unable to engage in

16  substantial gainful activity due to a medically determinable physical or mental impairment which

17  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

18  U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of

19  such severity that she is not only unable to do her previous work, but cannot, considering her age,

20  education, and work experience, engage in any other kind of substantial gainful work which

21  exists in the national economy.  Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).

22  The burden is on the claimant to establish disability.  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th

23  Cir. 1990).

24      In an effort to achieve uniformity of decisions, the Commissioner has promulgated

25  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

26  C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g) (2006).  Applying the evaluation process in this case,

27  the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity for the relevant

28  time period; (2) has an impairment or a combination of impairments that is considered "severe"

1  (degenerative disc disease, status post lumbar discectomy) based on the requirements in the

2  Regulations (20 C.F.R. §§ 404.1520, 416.920 (2006)); (3) does not have an impairment or

3  combination of impairments that meets or equals one of the impairments set forth in Appendix 1

4  to Subpart P of Part 404; and (4) is able to perform her past relevant work.  AR 13-15.

5        In this case, Plaintiff argues that (1) the ALJ's residual functional capacity assessment is

6  unsupported; (2) the ALJ failed to assess Plaintiff's obesity; (3) the ALJ improperly assessed

7  Plaintiff's credibility; and (4) the ALJ's determination that Plaintiff can perform her past relevant

8  work is unsupported.

9                            **DISCUSSION**

10  A.    Substantial Evidence

11          1.    Residual Functional Capacity

12        Plaintiff argues that substantial evidence does not support the ALJ's residual functional

13  capacity assessment.  In so arguing, Plaintiff contends that the ALJ erred by giving "great

14  weight" to the non-examining state agency medical consultants and improperly rejecting the

15  opinion of her treating physician, Dr. Yannis Stavropoulos, and the opinion of the consultative

16  examining physician, Dr. Jonathan Gurdin.

17              a.     *Dr. Stavropoulos' Opinion*

18        Plaintiff first contends that the ALJ erred in failing to adopt Dr. Stavropoulos' Medical

19  Assessment of Ability to Do Work-Related Activities (Physical) dated June 2, 2006.

20        The opinions of treating doctors should be given more weight than the opinions of

21  doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998);

22  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not

23  contradicted by another doctor, it may be rejected only for "clear and convincing" reasons

24  supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating

25  doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without

26  providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.*

27  (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out

28  a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn*, 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)..

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical

1    opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the

2    test for controlling weight."  SSR 96-2p; _Orn_, 495 F.3d at 633.

3        Here, the ALJ assigned "no weight" to the June 2, 2006, assessment, explaining first that

4    this assessment was "contrary" to Dr. Stavropoulos' previous reports.  AR 15.  Indeed, the June

5    2, 2006, assessment set forth extreme limitations that would likely preclude all work, but Dr.

6    Stavropoulos' prior treatment records do not support such harsh restrictions.  As explained by the

7    ALJ, in January 6, 2004, Dr. Stavropoulos opined that Plaintiff's disability only precluded her

8    from "heavy lifting [and] repetitive bending and stooping."  AR 335.  In December 2005, Dr.

9    Stavropoulos again opined that Plaintiff was restricted to "no heavy lifting [and] no repetitive

10   bending and twisting of the lumbar spine."  AR 354.

11       Further, the ALJ relied on the opinion of the qualified medical examiner, Dr. Charles

12   Potter in rejecting Dr. Stavropoulos' June 2006 opinion.  AR 15.  In June 2004, Dr. Charles

13   Potter opined that Plaintiff had a "disability best described as a disability precluding Heavy

14   Lifting, Repeated Bending, Stooping and Twisting."  AR 169.  Dr. Potter's opinion is consistent

15   with the limitations identified by Dr. Stavropoulos in January 2004 and December 2005.

16   Accordingly, the ALJ appropriately discounted Dr. Stavropoulos' June 2006 opinion based on

17   the inconsistencies with his prior opinions and the record.  _See Matney v. Sullivan_, 981 F.2d

18   _1016, 1020 (9th Cir. 1992)_ (inconsistencies in physician's opinion noted by ALJ represented

19   specific and legitimate reason for rejecting opinion).

20       Plaintiff also argues that the earlier reports of Dr. Stavropoulos and the report of Dr.

21   Potter were prepared for Workers' Compensation purposes and are not relevant to the assessment

22   of Plaintiff's residual functional capacity for Social Security purposes.  This argument is without

23   merit.  Although the terms employed in a workers' compensation disability rating are not

24   equivalent to Social Security terminology, the ALJ may not ignore a doctor's medical opinion

25   merely because it was issued in a workers' compensation context.  _See Desrosiers v. Sec. of_

26   _Health & Human Services_, 846 F.2d 573, 576 (9th Cir. 1988) (categories of work under Social

27   Security disability scheme are measured differently than the state workers' compensation

28   system); _Coria v. Heckler_, 750 F.2d 245, 247-48 (3rd Cir. 1984) (ALJ erred in failing to consider

1   medical reports submitted in state workers' compensation proceeding).  The ALJ must evaluate

2   such opinions as any other medical opinion.  *Coria*, 750 F.2d at 247-48.  However, the ALJ's

3   opinion should reflect that the ALJ considered the pertinent distinctions between the two

4   schemes.  *Desrosiers*, 846 F.2d at 576.

5          In this case, although the ALJ did not discuss explicitly the distinction between Social

6   Security and workers' compensation when addressing Dr. Stavropoulos's and Dr. Potter's

7   findings, his reasoning can be gleaned from the opinion.  It should be noted that the ALJ

8   primarily adopted the findings of state agency medical consultants and not those of the workers'

9   compensation doctors.  However, the limitations expressed by Dr. Stavropoulos in 2004 and

10  2005 and identified by Dr. Potter buttress those of the state agency medical consultants.  Dr.

11  Stavropoulos and Dr. Potter opined that Plaintiff was precluded from heavy lifting and repeated

12  bending, stooping and twisting.   The ALJ in this case adopted the opinion of the state agency

13  medical consultants and assessed Plaintiff's residual functional capacity at less stringent levels

14  than prescribed by Drs. Stavropoulos and Potter, determining that Plaintiff could perform "light"

15  work.  AR 15.  When analyzing medical reports using workers' compensation standards, the ALJ

16  "is entitled to draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d

17  540, 544 (9th Cir. 1996).

18         In addition, the limitations found by workers' compensation physicians were consistent

19  with the state agency medical consultants.  Accordingly, it was proper to adopt the state medical

20  consultants' residual functional capacity assessments in this case as they are "consistent with

21  other evidence," including the opinions of the workers' compensation doctors.  *Magallanes*, 881

22  F.2d at 752; *Andrews*, 53 F.3d at 1041 (reports of a non-examining physician may serve as

23  substantial evidence when they are supported by other evidence in the record and are consistent

24  with it).

25         Insofar as Plaintiff faults the state agency medical consultants for rejecting Dr.

26  Stavropoulos' January 6, 2004 opinion as based on subjective complaints, Plaintiff is mistaken.

27  The state agency medical consultants did not reject Dr. Stavropoulos' opinion.  The portion of

28  the record quoted by Plaintiff indicates that the state agency medical consultants rejected the

opinion of the "CE vendor" because it appeared to be "done based on subjective complaints rather than objective findings." AR 352. In so concluding, the state agency medical consultants expressly referenced the findings of the "TS." AR 352. Plaintiff herself identifies "TS" as the "treating specialist or treating surgeon," Dr. Stavropoulos. Plaintiff's Opening Brief, at p. 5. Accordingly, contrary to Plaintiff's contention, the state agency medical consultants did not reject Dr. Stavropoulos' opinion rendered in January 2004. Indeed, the state agency physicians expressly gave "more weight" to the opinion of Dr. Stavropoulos. AR 352.

           b.     *Dr. Gurdin's Opinion*

       Plaintiff contends that the ALJ erred in rejecting the opinion of the consultative examiner, Dr. Gurdin. The ALJ gave "less weight" to Dr. Gurdin's opinion as it appeared to be "based more on the claimant's subjective complaints." AR 15. As with the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. An ALJ may properly disregard a physician opinion where, among other reasons, the opinion is based primarily upon the medical history and the subjective complaints of a claimant. *See, e.g.*, *Matney*, 981 F.2d at 1020 (ALJ provided specific, legitimate reasons for disregarding physician's conclusions where physician examined claimant one time, produced a brief report and based a diagnosis on claimant's medical history and subjective complaints). In the instant case, Dr. Gurdin indicated in his report that his information "was obtained directly from the patient...and from several prior medical reports." AR 172. Accordingly, the ALJ provided a specific, legitimate reason for disregarding the conclusion of Dr. Gurdin.

       Plaintiff further contends the ALJ's conclusion that "malingering was noted on examination" by Dr. Gurdin has no basis in fact. AR 15; Plaintiff's Opening Brief, at p. 7. Dr. Gurdin's report reveals no express statement of malingering. The Commissioner contends that Dr. Gurdin identified "Waddell signs," which physicians use to detect nonorganic sources, such

1   as psychological conditions or malingering, for back pain.[2]  While Dr. Gurdin did identify two

2   "Waddell signs," he did not conclude that those signs meant Plaintiff was malingering or ascribe

3   any significance to those signs.  AR 173.  Consequently, the ALJ's conclusion that Dr. Gurdin

4   noted "malingering" in his examination is not supported by substantial evidence.

5           2.    <u>Obesity</u>

6           Plaintiff contends that the ALJ failed to evaluate the effect of Plaintiff's obesity on her

7   residual functional capacity.  The Commissioner counters that Plaintiff has failed to explain how

8   her obesity caused limitations greater than those found by the ALJ.

9           Obesity must be considered an impairment like any other impairment when evaluating

10  disability.  *See* Social Security Ruling 02-01p ("we consider obesity to be a medically

11  determinable impairment and remind adjudicators to consider its effects").  However, it remains

12  the claimant's burden to establish that her impairments result in functional limitations.  *See*

13  *DeLorme v. Sullivan*, 924 F.2d 841, 849-50 (9th Cir. 1990) ("claimant establishes a prima facie

14  case of disability by showing that his impairments prevent him from doing his previous job")*;*

15  *Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005) (ALJ is not required to discuss the

16  combined effects of a claimant's impairments unless the claimant presents evidence regarding

17  the effect).  In this case, Plaintiff has not identified any reliable medical opinions supporting

18  limitations resulting from her obesity.  Additionally, Plaintiff's treating physician, Dr.

19  Stavropoulos, noted Plaintiff's obesity in his March 2005 evaluation report ("Abdominal

20  protuberance due to obesity without tenderness is present") and tracked her weight during

21  periodic examinations.  AR 331, 355, 357, 364-65.  Dr. Stavropoulos did not opine, however, that

22  Plaintiff's obesity prevented her from working or that she had resulting limitations.  As discussed

23  above, the ALJ relied on the state agency medical consultants' opinions, which were consistent

24  with Dr. Stavropoulos' 2004 and 2005 reports.

25  //

26

27           [2]The Commissioner directs the Court to an article entitled <u>nonorganic Physical Signs in Low-Back Pain</u> and
    to the <u>The Spine Dictionary</u> to argue that positive signs ar an indication of symptom magnification or malingering.
28  However, it is not the role of this Court to look beyond the evidence presented to the ALJ and/or engage in such an
    analysis.

1    //

2

3            3.    Credibility

4        Plaintiff contends that the ALJ did not properly evaluate her credibility.  The ALJ is

5    required to make specific findings assessing the credibility of Plaintiff's subjective complaints.

6    *Ceguerra v. Sec'y of Health & Human Serv.*, 933 F.2d 735, 738 (9th Cir. 1991).  In rejecting the

7    complainant's testimony, "the ALJ must identify what testimony is not credible and what

8    evidence undermines the claimant's complaints."   *Lester,* 81 F.3d at 834.  Pursuant to Ninth

9    Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and

10   impairments is unreliable, the ALJ must make a credibility determination with findings

11   sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

12   claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  "If the ALJ's

13   credibility finding is supported by substantial evidence in the record, we may not engage in

14   second-guessing."  *Id.* at 959.

15       In discussing Plaintiff's testimony, the ALJ found that her medically determinable

16   impairments could reasonably be expected to produce the alleged symptoms, but that her

17   statements concerning the intensity, persistence and limiting effects are not entirely credible.  AR

18   14-15.  He then reviewed her testimony and identified evidence that negated her allegations that

19   she can only lift 8 pounds, stand 1 hour and sit 2 hours.  First, the ALJ discounted Plaintiff's

20   contentions in this case because she is able to take care of her 3 children, cook, grocery shop and

21   drive her children to and from school.  AR 15.  Plaintiff argues that the ALJ overstates her

22   testimony and made no findings regarding the transferability of these activities to a work setting

23   pursuant to *Orn v. Astrue.*

24       In *Orn*, the Ninth Circuit explained that the ALJ must make "specific findings relating to

25   [the daily] activities" and their transferability to conclude that a claimant's daily activities

26   warrant an adverse credibility determination.  *Orn*, 495 F.3d at 639 (citing *Burch*, 400 F.3d at

27   681).  It is not apparent how the activities noted by the ALJ, even assuming that it is a fair

28   representation of Plaintiff's testimony, translate into an ability to perform work activities.

1    The ALJ next identified evidence that Plaintiff attended computer operations school five

2    days a week from 8:00 a.m. until 3:30 p.m. and she finished school and received a certificate.

3    AR 15.  Plaintiff argues that additional testimony "clarifies the impression created by the ALJ

4    that [she] could go to school five days a week from 8:00 a.m. until 3:30 p.m. with no difficulties,

5    and that she successfully completed the training."  Plaintiff's Opening Brief, at p. 9.  While

6    Plaintiff testified that she could not complete the computer portion of the work, she also testified,

7    consistent with the ALJ's summary, that she received a certificate and was attending school from

8    8:00 a.m. to 3:30 p.m. five days a week.  AR 399-400.  She also reported to Dr. Stavropoulos that

9    she attended school from 8:00 a.m. to 3:30 p.m.  AR 354.

10    Insofar as Plaintiff contends that the ALJ erred by failing to make findings regarding the

11    transferability of the activity to a work setting, this contention is without merit.  The ALJ may

12    use ordinary methods of credibility determination in deciding that Plaintiff's subjective claims

13    were not credible, _Fair v. Bowen_, 885 F.2d 597, 604 n. 5 (9th Cir. 1989), and may make

14    inferences "logically flowing from the evidence."  _Macri v. Chater_, 93 F.3d 540, 544 (9th Cir.

15    1996).  That Plaintiff could attend the course five days a week from 8:00 a.m. to 3:30 p.m. and

16    receive a certificate belies her claim of an inability to stand for more than 1 hour and an inability

17    to sit for 2 hours.

18    As a third basis for finding that Plaintiff's impairment was not as limiting as alleged, the

19    ALJ cites Plaintiff's failure to see a doctor for her carpal tunnel syndrome.  AR 15.  Plaintiff

20    argues that stopping the computer portion of her vocational training, which caused the

21    aggravation, precluded the necessity of seeking medical attention.  Plaintiff's Opening Brief, at

22    pp. 9-10.  However, Plaintiff testified that she continues to have problems with carpal tunnel

23    syndrome, including difficulty holding a phone for two minutes or driving.  AR 395.  A

24    claimant's failure to seek treatment is a proper basis for finding her allegations of disabling pain

25    and other symptoms not credible.  _Bruton v. Massanari_, 268 F.3d 824, 828 (9th Cir. 2001);

26    _Burch_, 400 F.3d at 681 (ALJ is permitted to consider lack of medical treatment in assessing

27    credibility).

28

1    Based on the above, the ALJ set forth sufficiently specific reasons to permit the Court to

2    conclude that the ALJ did not arbitrarily discredit Plaintiff's testimony. *Thomas v. Barnhart*, 278

3    F.3d 947, 958 (9th Cir. 2002); *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004)

4    (upholding ALJ's credibility determination even though one reason may have been in error).

5         4.    Past Relevant Work

6    Plaintiff argues that there is no substantial evidence to support the ALJ's determination

7    that she can perform her past relevant work as a home attendant.  In determining whether a

8    claimant has the ability to perform a particular function the ALJ may consider either the specifics

9    of the particular job the claimant was actually performing, or the job as it is performed in the

10   national economy.  Here, the ALJ determined that plaintiff had the capacity to perform the

11   functional demands and job duties of a home attendant as she performed it.

12   Social Security Ruling 82-61 provides that there are three possible tests for determining

13   whether or not a claimant retains the capacity to perform her past relevant work.  One of the tests

14   identifies that "where the evidence shows that a claimant retains the RFC to perform the

15   functional demands and job duties of a particular past relevant job [ ] she actually performed, the

16   claimant should be found to be 'not disabled.'" *SSR 82-61*.  Another test is "[w]hether the

17   claimant retains the capacity to perform the functional demands and job duties of the job as

18   ordinarily required by employers throughout the national economy. (*The Dictionary of

19   Occupational Titles* (DOT) descriptions can be relied upon -- for jobs that are listed in the DOT -

20   - to define the job as it is *usually* performed in the national economy)" (emphasis in the original).

21   In the present case, the ALJ determined that plaintiff could perform her past relevant

22   work as home attendant as performed because she retains the residual functional capacity to

23   perform light work.  AR 15.  At the outset of his testimony, the VE testified that Plaintiff's past

24   relevant work as a home attendant as performed was light, unskilled.  AR 402.  Plaintiff points

25   out that the VE testified that Plaintiff's past work, as performed, involved 8 hours of

26   standing/walking, which is outside of the ALJ's RFC determination that she could stand and

27   walk six hours each in an eight-hour day.  Plaintiff's Opening Brief, at p. 10; AR 15, 405.  The

28   Commissioner counters that the VE mistakenly relied on the wrong work history report and only

1   Plaintiff's work as a stock room attendant required 8 hours of standing/walking while her work

2   as a home attendant required only 2-3 hours of standing/walking.  It is not clear, however, that

3   the VE was mistaken when testifying that the home attendant position as performed required

4   Plaintiff to be on her feet eight hours per day.  A review of the relevant work history report

5   shows that Plaintiff worked as a home attendant 2-3 hours per day and, of that time, she spent 2-3

6   hours walking and standing.  AR 81.  Extrapolating the work history report to a workday of 8

7   hours, Plaintiff arguably would be on her feet for 8 hours of walking and standing.  Accordingly,

8   remand for further proceedings is appropriate to resolve the conflict in the VE's testimony

9   regarding Plaintiff's work as a home attendant as performed, to determine whether Plaintiff

10  retained the RFC to perform her past relevant work as a home attendant at step four of the

11  sequential evaluation and to conduct step 5 should it become necessary.

12                                **RECOMMENDATION**

13          Based on the foregoing, the Court finds that the ALJ's decision is not supported by

14  substantial evidence.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the

15  administrative decision of the Commissioner of Social Security be REVERSED and the case be

16  REMANDED to the ALJ for further proceedings consistent with this opinion.  The Court further

17  recommends that JUDGMENT be entered in favor of Plaintiff Theresa Lira-Iniguez and against

18  Defendant Michael J. Astrue, Commissioner of Social Security.

19          These findings and recommendations will be submitted to the Honorable Oliver W.

20  Wanger pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) court days

21  after being served with these findings and recommendations, the parties may file written

22  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

23  Findings and Recommendations."  The parties are advised that failure to file objections within

24  the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951

25  F.2d 1153 (9th Cir. 1991).

26

27          IT IS SO ORDERED.

28  **Dated:    September 22, 2008**            **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE

27